# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 06-2844/2419

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Daniel P. Mitchell, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 9, 2007
Filed: February 6, 2007

_____

Before COLLOTON and GRUENDER, Circuit Judges, and GOLDBERG,[1] Judge.

_____

GOLDBERG, Judge.

Appellant Daniel P. Mitchell ("Mitchell") appeals from his conviction for violating 18 U.S.C. § 152(1). He also contends the district court erred in denying his motion to dismiss the 18 U.S.C. § 152(3) charge in his indictment. For the reasons that follow, we reverse the 18 U.S.C. § 152(1) conviction and affirm the district court's denial of the motion to dismiss.

_____

[1] The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

## I.

On May 19, 2005, Mitchell was indicted on two bankruptcy fraud counts arising from his personal bankruptcy in 2000. Specifically, he was charged with fraudulent concealment of estate property in his bankruptcy case in violation of 18 U.S.C. § 152(1) and submitting a false declaration in a bankruptcy petition in violation of 18 U.S.C. § 152(3). Both charges related to an equity interest in a closely held corporation, Wood Floors Import, Inc. ("WFI"), owned in part at one point by Mitchell. The government claimed at trial that Mitchell concealed the existence of his equity interest as well as certain income derived from the company, and also made false statements in connection with the equity interest and the income.

In early 1998, two years before filing for bankruptcy, Mitchell founded WFI. At that time, he owned 50 percent of the company, and two other owners each held a 25 percent stake. Sometime in the fall of 1998, Mitchell discussed with an attorney the possibility of transferring his share in WFI to his wife "so as to maintain a relationship with WFI" in the event he declared personal bankruptcy. Appellant's Br. 16. The government contends that this transaction never took place, or that it was "on paper only" and a sham. Appellee's Br. 19. Mitchell, on the other hand, claims to have been motivated by a genuine desire to occupy his wife, who was suffering from depression, with a set of business activities and challenges. Mitchell maintains the transfer was properly accomplished in November 1998, though he also acknowledges that the corporate documents were not finalized until March 2000. The government argues that the transfer, if it occurred at all, happened in March 2000. In the event that the transfer was accomplished, the government contends Mitchell nevertheless had the obligation to disclose his former WFI interest when filing for bankruptcy because transfers of property within a year before the filing of a bankruptcy petition are voidable preferential transfers that can become part of the bankruptcy estate under 11 U.S.C. § 547. See 11 U.S.C. § 547 (2000). Importantly, during 1999 and 2000, he

2

received income from WFI in the form of payments to service a truck loan and payments to service a bank loan he owed to F&M Bank.

On July 12, 2000, Mitchell filed a voluntary petition for Chapter 7 bankruptcy. In his statement of financial affairs and schedules, Mitchell reported $35,000 in assets, including a truck valued at $16,000, and liabilities of $839,995, including the F&M Bank loan, which amounted to $160,000. He also disclosed that he would continue to receive $1000 of income per month from WFI as salary. On May 19, 2005, Mitchell was charged in a two-count indictment. A jury trial was held on August 29 to 31, 2005.

In its instructions to the jury, the district court suggested that the jury could convict Mitchell of violating § 152(1) if it found that Mitchell concealed pre-petition income that was part of the bankruptcy estate. The district court also submitted several special interrogatories to the jury on various questions. As to the § 152(1) count, an interrogatory asked the jury to indicate which information the jury had "unanimously [found] beyond a reasonable doubt that the Defendant concealed . . . ." Two check boxes appeared immediately below the interrogatory, corresponding to the allegedly concealed items: the equity interest in WFI and his pre-petition income. The jury, then, was to check the items that it unanimously found Mitchell had concealed. Mitchell moved to include a jury instruction on an "advice of counsel" defense, and the district court denied that motion.

As to the § 152(3) count, the district court posed three additional interrogatories. First, the district court posed an interrogatory similar to its § 152(1) interrogatory, instructing the jury to "place a check mark before the false representation(s) that you unanimously find beyond a reasonable doubt that the Defendant made . . . ." Here, three check boxes appeared, because the government alleged three separate false representations. A second interrogatory appeared below, asking the jury if it "unanimously [found] beyond a reasonable doubt that one or more

3

of the false declarations, certificate, verification and statement under penalty of perjury were 'material' matters, that is, had a natural tendency to influence, or were capable of influencing, the outcome of the bankruptcy proceeding[.]" The jury was simply asked to check "yes" or "no" in response. A final interrogatory, applicable only if the jury affirmed the materiality of the statements, asked the jury to specify which of the three statements were material under the standard articulated in the previous interrogatory. The district court had included the two interrogatories pertaining to materiality because it was uncertain at the time the case was submitted to the jury if materiality was a necessary element of a 18 U.S.C. § 152(3) charge. Indeed, the Eighth Circuit model jury instruction for 18 U.S.C. § 152(3) observed that "[t]here is some question as to whether materiality is an element of the offense of bankruptcy fraud" on account of the Supreme Court case United States v. Wells, 519 U.S. 482 (1997). Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit, § 6.18.152B, at 139 n.1 (2005).

The jury returned a verdict of guilty as to both the § 152(1) charge and the § 152(3) charge. In response to the § 152(1) interrogatory, the jury found beyond a reasonable doubt that Mitchell had concealed his "total income from January 1, 1999, through about July 11, 2000." The jury did not find beyond a reasonable doubt that Mitchell had concealed his equity interest, if any, in WFI. In response to the first § 152(3) interrogatory, the jury found that Mitchell had made false statements about his "total income from January 1, 1999, through about July 11, 2000" and "[d]ebt payments made on behalf of Defendant by [WFI] on an unsecured F&M loan[.]" In response to the materiality interrogatory, the jury checked the "no" box, annotating that it could not make a unanimous finding beyond a reasonable doubt that one or more of the false statements was material. Because the final interrogatory applied only if the jury had checked the "yes" box to the second interrogatory, the jury did not respond to it.

In synthesis, the jury convicted Mitchell of violating § 152(1) because he concealed his pre-petition income from WFI. The jury convicted Mitchell of violating § 152(3) because he made false statements about (1) his pre-petition income and (2) the debt payments WFI made on his behalf. Again, the jury was unable to find unanimously that these statements were material.

After the jury returned its verdict, Mitchell filed a motion for a new trial under Federal Rule of Criminal Procedure 33, and a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. He contended that he was entitled to a new trial because the jury did not find his false statements were material, and that the district court erred by not instructing the jury on his "advice of counsel" defense. In addition, he argued that there was insufficient evidence to support his convictions.

The district court granted the Rule 33 motion as to the § 152(3) conviction because it held that § 152(3) required a showing of materiality beyond a reasonable doubt. Since the jury had convicted Mitchell of violating § 152(3) without finding any materiality, the court observed that "the jury's verdict . . . cannot stand," and ordered a new trial. United States v. Mitchell, No. 05-50, 2006 U.S Dist. LEXIS 858, at *42 (N.D. Iowa Jan. 4, 2006). The district court denied the Rule 33 motion as to the § 152(1) count and denied the Rule 29 motion as to both counts. Mitchell then moved to dismiss the § 152(3) charge on double jeopardy grounds; the district court denied that motion.

II.

A.      *18 U.S.C. § 152(1) and Pre-Petition Income*

Mitchell appeals from his 18 U.S.C. § 152(1) conviction. Mitchell's appeal alleges the district court made an error of law in interpreting 18 U.S.C. § 152(1) and 11 U.S.C. § 541(a)(6). Our review over claims of legal error is de novo. See United

States v. Templeton, 378 F.3d 845, 849 (8th Cir. 2004). He contends that a defendant may not be convicted of violating 18 U.S.C. § 152(1) for failing to disclose pre-petition income, even when that income was derived from assets that eventually become part of the bankruptcy estate. He argues further that since the jury only found that he had concealed pre-petition income, his conviction must be reversed. We agree.

18 U.S.C. § 152(1) provides for up to five years imprisonment for a defendant who "knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor . . . ." 18 U.S.C. § 152(1) (2000). An essential element of a § 152(1) violation, then, is the concealment of "property belonging to the estate."

The contours of the bankruptcy estate are set forth in 11 U.S.C. § 541. Under that section, the following property, inter alia, is included in the bankruptcy estate: "(1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case. . . . [and] (6) [p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(1) & (6) (2000). Stated succinctly, the bankruptcy estate includes property interests of the debtor at the commencement of the case, as well as proceeds of the estate. See United States v. Robbins, 997 F.2d 390, 393 (8th Cir. 1993). According to the government, pre-petition income derived from assets that upon filing are included in the estate is also part of the estate as "proceeds . . . or profits of or from property of the estate" under 11 U.S.C. § 541(a)(6). The government's case was that Mitchell owned WFI, which became part of the estate, and that therefore pre-petition income derived from WFI was property of the estate as well.

This interpretation must fail. Pre-petition income can never be "of or from property of the estate" because the estate is only formed after the filing of the bankruptcy petition. See In re Markmueller, 51 F.3d 775, 776 (8th Cir. 1995). The filing of a bankruptcy petition creates a new legal entity: the bankruptcy estate. See 11 U.S.C. § 541(a)(1) ("The commencement of a case . . . creates an estate."). There is no bankruptcy estate prior to the filing of a petition, so to speak of pre-petition income as "proceeds . . . or profits" from estate property is a contradiction in terms. Instead, 11 U.S.C. § 541(a)(6) is concerned with the passive or investment income, accrued post-petition, and derived from assets that form part of the estate. See 5 Collier on Bankruptcy P 541.17 (15th ed. Rev. 2006) ("Included as property of the estate under section 541(a)(6) are all proceeds, products, offspring, rents, or profits of property of the estate, acquired after the case is commenced.") (emphasis added).

Accordingly, we hold that income received prior to the filing of a bankruptcy petition is not included as part of the bankruptcy estate. As such, no person may be convicted of violating 18 U.S.C. § 152(1) for failing to disclose such income. Mitchell's conviction must therefore be reversed.[2]

B.    *Double Jeopardy*

Based on the jury's failure to find Mitchell's statements were material, the district court granted Mitchell's Rule 33 motion and ordered a new trial on the 18 U.S.C. § 152(3) count. Mitchell then moved to dismiss the indictment on double jeopardy grounds. The district court denied the motion, and Mitchell now appeals.

---

[2] Because we reverse Mitchell's § 152(1) conviction, we need not address his argument that the district court erred by failing to include a jury instruction on his "advice of counsel" defense.

A failure to dismiss an indictment on double jeopardy grounds is subject to de novo review. See United States v. Rea, 300 F.3d 952, 956 (8th Cir. 2002).

The Double Jeopardy Clause of the Fifth Amendment "protects against a second prosecution for the same offense after acquittal." Id. at 956 (quotation marks omitted). The Supreme Court has incorporated the doctrine of issue preclusion, or collateral estoppel, into the Double Jeopardy Clause, applying it not only to acquittals, but also to final adjudications of fully litigated legal issues. See Ashe v. Swenson, 397 U.S. 436, 442-43 (1970). Therefore, double jeopardy is triggered when either (1) a jury acquits a defendant or (2) makes a factual finding beyond a reasonable doubt that would be fatal to the government's case. The burden is "on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." Dowling v. United States, 493 U.S. 342, 350 (1990).

In this case, the jury convicted Mitchell of violating 18 U.S.C. § 152(3), so there was no acquittal. Mitchell argues, though, that the jury's factual findings operate to preclude future litigation of the "materiality" issue – a crucial element in the government's case. In this case, the jury stated that it could not "find unanimously beyond a reasonable doubt that one or more of the false declarations, certificate, verification, and statement under penalty of perjury were 'material' matters, that is, had a natural tendency to influence, or were capable of influencing, the outcome of the bankruptcy proceeding." Appellant's Br. Addendum at 2 (Verdict Form, Count II).

The response to the interrogatory does not suggest that the jury made a unanimous factual finding with respect to the materiality of the misstatements. The finding means one of two things: either (1) the jury unanimously found the statements immaterial, or (2) some jurors found the statements material and some jurors found the statements immaterial. In the former case, jeopardy would attach, and in the latter

case jeopardy would not attach. The language of the interrogatory itself is not susceptible to discerning just what, specifically, the jury found; we know merely that it was unable to unanimously agree beyond a reasonable doubt that the statements were material. There is nothing in the language that suggests the jury has found beyond a reasonable doubt that the statements were immaterial.

Mindful that the burden is on the defendant to demonstrate that jeopardy has attached, see Schiro v. Farley, 510 U.S. 222, 233 (1994), we affirm the district court's denial of his motion to dismiss the indictment on the 18 U.S.C. § 152(3) charge.

III.

For the foregoing reasons, we reverse Mitchell's 18 U.S.C. § 152(1) conviction, and affirm the district court's denial of his motion to dismiss the indictment on the 18 U.S.C. § 152(3) charge.

_____